IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00046

AMIE STEPANOVICH, an individual,

        Plaintiff,

v.

JOHN DOE USER OF TILE DEVICE WITH
SERIAL NUMBER CH40195671TD1, whose true
name is unknown,

        Defendant.

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiff Amie Stepanovich, by and through her pro bono counsel, pleads and alleges as follows:

### I. PRELIMINARY STATEMENT

1. Plaintiff recently learned that a location tracking device was found in her car.

2. Auto shop workers found the device, made by Tile, Inc. ("Tile"), while performing maintenance and detail work on Plaintiff's car. Upon information and belief, the device was placed inside Plaintiff's car by the Defendant in Colorado and used to surreptitiously surveil and monitor Plaintiff's movements.

3. By placing the tracking device inside Plaintiff's car without her permission and hiding the device from her, the Defendant intentionally invaded Plaintiff's privacy and intruded upon her seclusion.

1

4. Such surreptitious surveillance is also a crime punishable under stalking laws. *See* C.R.S.A. § 18-3-602(1)(c).

5. Plaintiff was terrified to learn that her privacy was invaded and has suffered considerable harm as a result of the Defendant's actions. She brings claims of invasion of privacy by intrusion upon seclusion and outrageous conduct to recover damages against the Defendant.

6. Despite reporting the Defendant's actions to the police and to Tile, Plaintiff has been unable to identify the Defendant. Plaintiff therefore brings this lawsuit against Defendant as John Doe User of Tile Device with Serial Number CH40195671TD1 and, in a separate filing, seeks leave from this Court to conduct limited discovery to determine the Defendant's true identity.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. Plaintiff is a citizen of the Commonwealth of Virginia and has reason to believe that Defendant is a citizen of the State of Colorado.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because Plaintiff has reason to believe that a substantial part of the events or omissions giving rise to the claim occurred in this district and that Defendant resides in this district.

## III. PARTIES

9. Plaintiff Amie Stepanovich is an individual who resides in Pilot, Virginia. She moved to Pilot in October 2022 after residing in Washington D.C. from January 2022 to October 2022. Plaintiff discovered the location tracking device on her vehicle soon after she moved to D.C.,

2

and she has reason to believe the tracking device was placed on her vehicle when she was living in Arvada, Colorado.

10. Plaintiff brings this lawsuit against Defendant John Doe User of Tile Device with Serial Number CH40195671TD1. Upon information and belief, Plaintiff alleges that the Defendant was responsible for Plaintiff's injuries and damages stemming from the tracking of her location without her knowledge or consent.

## IV. STATEMENT OF FACTS

### A. Tile Location Tracking Devices

11. Today, the surveillance tools at the disposal of stalkers and other malicious actors are not limited to equipment marketed for clandestine activities. Many products and services available to the general public now incorporate surprisingly effective location tracking capabilities.

12. One example is a tracking device manufactured by Tile, Inc., which is designed to help people find misplaced items, such as car keys and wallets.

13. The Tile tracker is a small, lightweight object that is meant to be attached to the item that the owner wants to keep track of. Once activated, the Tile tracker transmits location data via Bluetooth to an application that is installed on the user's phone or other handheld device.

14. Tile trackers are affordable (the trackers sell for roughly $25 to $35) and can be purchased by anyone through the company's website, www.thetileapp.com, or from popular resellers like Amazon, Walmart, Target, and Best Buy.

15. The Tile tracker has a broad geographic range and can collect location data over extended periods of time, with batteries lasting up to three years with no charging required.[1] The tracker transmits location data not only when it is within the 76 meter to 120 meter range of the user's device, but also when it is within range of any phone running the Tile application and Tile's "Network Extenders."[2]

16. To use the Tile tracker's location tracking features, one need only download the application on a cell phone or tablet, register for a Tile account, and activate a specific Tile tracker by pairing it via Bluetooth to the user's handheld device.

17. Tile trackers have become increasingly popular, with over 40 million sold.[3]

18. It has also become popular for nefarious actors to use Tile trackers for malicious purposes, such as stalking.[4] Because the Tile tracker is so small, it can be hidden inside vehicles where the target is unlikely to look, such as underneath the hood or inside small crevices of the car's interior, to track the vehicle itself.

---

[1] Do You Need to Charge Your Tile?, Tile Tips, https://www.tile.com/en-us/blog/do-you-need-to-charge-a-tile-tracker-battery-life (Dec. 15, 2021) ("Tile Slim – Non-replaceable battery with a 3-year lifespan, no charging required.")
[2] See Tile: How it Works, https://www.thetileapp.com/en-us/how-it-works.
[3] Nick Guy, The Best Bluetooth Tracker, NY Times: Wire Cutter (April 7, 2022), https://www.nytimes.com/wirecutter/reviews/best-bluetooth-tracker/ ("Tile tells us it has sold more than 40 million trackers."
[4] Quinn Welsch, Sheriff's Office investigating 'particularly alarming' cyberstalking of teenage girl who found tracker on her car after Hoopfest, The Spokesman-Review (July 21, 2022), https://www.spokesman.com/stories/2022/jul/21/sheriffs-office-investigating-cyberstalking-of-tee/#:~:text=A%20teenage%20girl%20received%20an,discovery%20as%20a%20cyberstalking%20case; Alfonzo Galvan, Brookings woman finds Bluetooth tracker device in her vehicle, warns others: 'Be careful', Argus Leader (June 10, 2022), https://www.argusleader.com/story/news/crime/2022/06/10/brookings-south-dakota-woman-finds-tile-bluetooth-tracker-vehicle-stalking-safety/7553290001/;  Baylee Peterson, Brookings girl finds tracer in car, Dakota News Now (June 8, 2022), https://www.dakotanewsnow.com/2022/06/09/brookings-girl-finds-tracer-car/ Bill Spencer & Moriah Ballard, High-Tech 'Finder' devices like Tile and Air Tag are being used as stalking tools, Click2Houston.com (December 10, 2021) https://www.click2houston.com/news/local/2021/12/10/high-tech-finder-devices-like-tile-and-air-tag-are-being-used-as-stalking-tools/; Jessica Willey, Houston woman says ex used 'Tile' device to stalk her repeatedly. ABC 13 Eyewitness News, https://abc13.com/houston-woman-harassment-high-tech-device-stalking/3719155/ (July 6, 2018).

### B.   A Tile Location Tracking Device Was Found Inside Plaintiff's Car

19. Plaintiff lived in Colorado for more than two years, residing in Boulder, Colorado from July 2019 to July 2020, and Arvada, Colorado from July 2020 until she moved to Washington, D.C. in January 2022. In early 2021, a well-respected and visible part-time employee of Plaintiff's employer was accused of sexual misconduct and later resigned their employment. Plaintiff reported the misconduct, worked to sever ties between the accused and the organization she led, and was involved in the fact-finding inquiry that her employer conducted.

20. While several of Plaintiff's colleagues agreed with Plaintiff's decision to report the misconduct, other colleagues sided with the accused and reacted angrily to the accused's resignation. Plaintiff was harassed by these individuals regularly and made to feel guilty for reporting the accused's conduct.

21. In the throes of an untenable work environment that had turned overtly hostile toward her due to her decision to report the misconduct, Plaintiff decided to seek new employment.

22. In December 2021, Plaintiff took a new job and moved to Washington, D.C. Plaintiff made the more than 1,600 mile drive from Colorado to Washington, D.C. in her Honda Fit hatchback vehicle. She arrived in Washington, D.C. in January 2022.

23. Shortly after arriving in Washington, D.C., Plaintiff hired an auto shop to perform routine maintenance and professionally clean her vehicle.

24. While servicing Plaintiff's vehicle on or around May 2022, the auto shop found a small, thin Tile tracking device inside the vehicle.

25. A true and accurate depiction of the Tile tracker that was found in Plaintiff's vehicle is attached hereto as Exhibit 1. Aware that Tile trackers have been placed inside vehicles to stalk

unsuspecting people, Plaintiff was alarmed and distressed that the auto shop found a Tile tracker inside her Honda Fit.

26.     Plaintiff has never used or owned a Tile tracker, and she did not place the tracker inside her vehicle.  Nor had she ever come across the Tile tracker while emptying and cleaning her car while she lived in and before she left Colorado.  Plaintiff bought her vehicle new from a Honda dealership in December 2018 and was the only owner and primary operator of the vehicle during the time in question.

**C.     Despite Performing a Diligent Investigation, Plaintiff Has Not Been Able to Determine the True Identity of the Defendant**

27.     After the Tile tracker was discovered in her vehicle, Plaintiff took steps to determine how it got there and whether it was placed inside her car for stalking purposes.

28.     Plaintiff confirmed that her sister and members of her family previously owned Tile trackers, but none of their trackers had been misplaced.  Other than her family, no one who might have owned a Tile tracker was inside Plaintiff's vehicle with Plaintiff or had possession of her vehicle with her knowledge before she left Colorado.

29.     Plaintiff also reported the incident to the Washington, D.C. Metropolitan Police and asked the police to investigate, insisting that a crime had been committed, but the officers refused.

30.     With no options left, Plaintiff contacted Tile, Inc., the maker of the device, and explained the incident to a representative for Tile's parent company, Life360.  The representative gave Plaintiff the serial number of the tracker (CH40195671TD1), *see* Exhibit 1, explained that the device was an older version of Tile's "Slim" tracker model, and informed Plaintiff that the device's battery had died.

6

31. The representative also informed Plaintiff that, absent criminal action, Tile could not provide Plaintiff with information about the identity of the person who owned the tracker. The representative encouraged Plaintiff to request that a court issue a subpoena to obtain that information.

**D. The Tracking Device Was Placed Inside Plaintiff's Vehicle by the Defendant to Stalk Plaintiff**

32. Upon information and belief, the Tile tracking device was placed inside Plaintiff's vehicle car while she was living in Colorado, by Defendant, a Colorado resident. The tracking device was discovered shortly after Plaintiff moved from Colorado to Washington, D.C., and no one but her had access to the vehicle before the tracker was found.

33. Moreover, Plaintiff can think of no incident or relationship likely to have made her a target of stalking other than her decision to report the harassment that occurred at her place of employment in Colorado.

34. Upon information and belief, the Defendant intentionally placed the Tile tracking device on or about Plaintiff's Honda Fit and used the device to surveil her location, without her knowledge or consent.

35. With the information provided by the Tile tracking device, the Defendant was able to surreptitiously obtain personal information about Plaintiff's whereabouts and track her movements.

36. Defendant's conduct was an offensive and objectionable invasion of her privacy, and this conduct would be offensive and objectionable to any reasonable person.

37. Defendant's conduct was also extreme and outrageous. Upon information and belief, it was done with the intention of causing Plaintiff emotional distress or with reckless disregard of the possibility of causing Plaintiff emotional distress.

### E. As a Result of Defendant's Intrusion Upon Plaintiff's Seclusion and Outrageous Conduct, Defendant Has Caused Plaintiff to Suffer Damages

38. Plaintiff still does not know the identity of the person who used the Tile device to monitor her. As a result, Plaintiff lives in a constant state of fear and paranoia, and feels helpless.

39. Plaintiff gets frightened when motion detectors are set off, including those that were attached to her residence when she lived in D.C., and she constantly looks out windows to surveil her surroundings. She keeps a bottle of pepper spray in her car and has slept with a blunt-force object next to her bed for protection. Plaintiff also sold her Honda Fit because it reminded her of the incident.

40. Since the discovery of the Tile, Plaintiff has experienced heightened negative reactions to any stories involving stalking. Stories related to stalking shared on the news or by friends trigger Plaintiff's fear and paranoia and make it difficult for her to feel safe.

41. As a result of the Tile tracker incident, Plaintiff also experiences extreme anxiety and is receiving treatment from medical professionals. She has met with physicians multiple times since the tracker was discovered and is working with her current physician to determine an appropriate selective serotonin reuptake inhibitor (anti-depressant) and to achieve the correct dosage.

42. Accordingly, as a result of Defendant's intrusion upon her seclusion and outrageous conduct, Plaintiff suffered and will continue to suffer actual damages, including, without limitation,

physical and mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, public disgrace, indignity, and impairment of the quality of life.

## COUNT ONE
### Invasion of Privacy by Intrusion upon Seclusion

43. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

44. Defendant intentionally intruded on Plaintiff's seclusion by hiding a location tracking device inside Plaintiff's car and using the tracking device to monitor Plaintiff's location, without her consent or knowledge.

45. Defendant's intentional intrusion on Plaintiff's seclusion was offensive and objectionable to Plaintiff and would be offensive or objectionable to a reasonable person.

46. Plaintiff is entitled to relief for Defendant's tortious intrusion on Plaintiff's seclusion under the common law of the State of Colorado.

47. By reason of the foregoing, Plaintiff is entitled to recover actual damages, plus interest, costs, and attorney's fees from Defendant in an amount to be determined at trial.

48. Moreover, Defendant's conduct was done knowingly, willfully, and with malicious intent, and Plaintiff is entitled to punitive damages in an amount to be determined at trial.

## COUNT TWO
### Outrageous Conduct

49. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

50. By hiding a location tracking device inside Plaintiff's car without Plaintiff's knowledge or consent, and in violation of Colorado law, Defendant engaged in extreme and outrageous conduct.

51. The acts of Defendant were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon Plaintiff. In the alternative, such acts were done in reckless disregard of the probability of causing Plaintiff emotional distress.

52. These acts did in fact result in severe and extreme emotional distress. As a direct and proximate result of Defendant's acts alleged above, Plaintiff suffered and will continue to suffer severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness, and anxiety.

53. As a direct and proximate result of Defendant's acts alleged above, Plaintiff was caused to obtain medical and psychiatric treatment on several occasions and will continue said treatment for an indeterminable length of time.

54. By reason of the foregoing, Plaintiff is entitled to recover actual damages, plus interest, costs, and attorney's fees from Defendant in an amount to be determined at trial.

55. Moreover, Defendant's conduct was done knowingly, willfully and with malicious intent, and Plaintiff is entitled to punitive damages in an amount to be determined at trial.

## II.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a) Declare that Defendant's actions as described above constituted an intrusion upon seclusion and outrageous conduct;

b)   Award to Plaintiff damages for injury sustained by her as a result of Defendant's wrongdoing, in an amount to be proven at trial, including pre-judgment interest thereon;

c)   Award to Plaintiff punitive damages in an amount to be proven at trial;

d)   Award to Plaintiff reasonable attorneys' fees and other costs and expenses of suit to the extent permitted by law; and

e)   Grant Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all issues so triable.

Dated: January 6, 2023                                    Respectfully submitted,

<u>s/ Matthew T. Billeci</u>
***Matthew T. Billeci***
Jones Day
3161 Michelson Dr., Suite 800
Irvine, CA 92612
Telephone: 1.949.553.7542
Email:  mbilleci@jonesday.com

*Attorney for Plaintiff Amie Stepanovich*

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

AMIE STEPANOVICH, an individual,

       Plaintiff,

v.

JOHN DOE USER OF TILE DEVICE WITH
SERIAL NUMBER CH40195671TD1, whose true
name is unknown,

       Defendant.

---

## **VERIFICATION**

---

I, Amie Stepanovich, state under oath that I am the plaintiff in the case captioned above, I have read the Verified Complaint, and the statements contained in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

This 6th day of January, 2023.

                                                /s/ *Amie Stepanovich*
                                                Amie Stepanovich